70 F.3d 121
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roger E.A. TAYLOR, Defendant-Appellant.
 Nos. 94-30434, 94-30449.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 17, 1995.
Decided Nov. 7, 1995.
 
 1
 Before: REINHARDT and TROTT, Circuit Judges, and SCHWARZER, District Judge*
 
 
 2
 MEMORANDUM**
 
 
 3
 On January 13, 1994, Roger A.E. Taylor was indicted for possession of a machine gun in violation of 18 U.S.C. Secs. 922(o) and 924(a)(2). Upon the conclusion of the government's case at trial, the defendant moved for dismissal in accordance with Fed.R.Crim.P. 29. The district court reserved ruling on the Rule 29 motion. On September 8, 1994, at the end of a two-day trial, the jury convicted defendant of machine gun possession. The district court granted defendant's Rule 29 motion on November 2, 1994.
 
 
 4
 The United States appealed the district court's grant of defendant's motion for judgment of acquittal. Taylor cross-appealed claiming that the trial court erred in admitting evidence that was unduly prejudicial. We have jurisdiction over a judgment of acquittal under 28 U.S.C. Secs. 1291 and 1294 and 18 U.S.C. Sec. 3731. U.S. v. Sharif, 817 F.2d 1375, 1376 (9th Cir.1987) ("[A] government appeal is permissible" where "the jury returns a guilty verdict and the district court enters a judgment of acquittal") (citations omitted). See also U.S. v. Rojas, 554 F.2d 938 (9th Cir.1977) (holding government may appeal trial court's judgment of acquittal after a guilty jury verdict without violating double jeopardy). We reverse the district court's grant of defendant's Rule 29 motion and remand for resentencing.
 
 FACTS
 
 5
 The facts are essentially undisputed. On February 25, 1993, in response to complaints of gunshots and screaming, county officers stopped Taylor and two other persons who were preparing to leave a residential driveway in a pick-up truck. They found a number of firearms. Taylor was holding a Colt AR-15 rifle containing one round of ammunition, and a handgun was found in his pocket. Another rifle and three magazines were on the floor of the truck near the defendant. Three live rounds of AR-15 ammunition and one spent .22 casing were found outside the vehicle.
 
 
 6
 In a discussion with Deputy Sheriff McLeod the next day, Taylor said that the AR-15 was his weapon and that he had brought it and the ammunition with him for protection. He explained that he had loaned money to his two companions, Deborah Scott and Robert Lowell. Scott and Lowell had returned to Taylor's house intoxicated and told him that the money had been taken by an armed person. Taylor said that he had wanted to help Scott and Lowell recover the money and get home. He told Deputy McLeod that he had brought the gun as a "precaution" and that he had fired one round into the air as a "warning shot" in response to a shot that had been fired by someone else.
 
 
 7
 Upon opening the AR-15, Deputy Sheriff Steve Barnett found a foreign piece of metal in the weapon which he suspected was converted from a semiautomatic into a machine gun. He test-fired the weapon and determined it was a machine gun. When he removed the piece of metal, it fired as a semiautomatic. Even without the piece of metal, however, the gun was susceptible to a malfunction that caused it to fire more than one round at a time. The firearm was not registered as a machine gun to the defendant.
 
 
 8
 Bureau of Alcohol, Tobacco, and Firearms Special Agent Ben Silva identified the metal piece as a "lightning link." Agent Silva testified that a lightning link has no repair function and is used to convert a semiautomatic weapon into a machine gun. With the lightning link in place, the weapon would only fire as a machine gun. The lightning link did not carry a serial number and appeared home-made. It would have been visible to anyone who opened the gun, which would have been necessary in order to clean it. According to Silva, repeated use of a lightning link creates wear on a weapon and may cause it to malfunction and fire multiple rounds even after removal of the lightning link.
 
 
 9
 Silva also explained that a weapon with a lightning link could nevertheless be loaded to fire only one round by leaving only one round in the chamber. He stated:
 
 
 10
 This particular model had a 20-round magazine. When tested, if that magazine was loaded with 20 rounds and you insert it into this weapon with this lightning link, there would be no way you could fire it semiautomatic. It would be a machine gun, machine gun only. If, however, you left one round of ammunition in the magazine and then loaded it into the weapon and removed the magazine, you would only get one shot because there are no other rounds there to be picked up.
 
 
 11
 He also testified that gun owners may remove magazines while in vehicles to make firearms "more maneuverable" and that there was no indication that defendant's particular firearm was a fully automatic weapon from external observation.
 
 
 12
 Over the defendant's objections, the district court admitted into evidence ammunition and a mock-up of a model firearm that was larger than the defendant's actual AR-15. Agent Silva used the model firearm to demonstrate the mechanics of converting a semiautomatic weapon to a machine gun.
 
 
 13
 During the course of trial, Taylor approached Agent Silva in the parking lot of the courthouse and showed him an old photograph of an unidentified man in military fatigues, with an assault rifle and a bandoleer of ammunition.[1] He told Silva that this was what he had done for his country.
 
 DISCUSSION
 I. Standard of Review
 
 14
 Fed.R.Crim.Proc. 29 provides that a district court "shall order the entry of judgment of acquittal of one or more offenses charged in the indictment ... if the evidence is insufficient to sustain a conviction." We review a lower court's grant of a Rule 29 motion de novo. Sharif, 817 F.2d at 1377; U.S. v. Johnson, 804 F.2d 1078, 1081 (9th Cir.1986).
 
 II. Scope of Review
 
 15
 The present appeal must be limited to review of the Rule 29 order; the Court has no jurisdiction to hear defendant's cross-appeal challenging the admission into evidence of ammunition, a model firearm, and Agent Silva's testimony regarding defendant's suggestion that he had served in the military. Under 28 U.S.C. Sec. 1291, a district court's judgment must be final before it is reviewable on appeal. Affirming the judgment of the lower court would render the cross-appeal moot. Since we reverse that judgment and remand for sentencing, defendant's cross-appeal is unreviewable until the district court has " 'end[ed] the litigation on the merits and le[ft] nothing for the court to do but execute the judgment.' " Midland Asphalt Corp. v. U.S., 489 U.S. 794, 798 (1989) (citations omitted). In other words, defendant cannot appeal until after conviction and imposition of the sentence. Id. The Fifth Circuit has specifically held that a defendant cannot maintain a cross-appeal after a judgment of acquittal. U.S. v. Williams, 679 F.2d 504, 507 (5th Cir.1982), cert. denied, 459 U.S. 1111 (1983).
 
 
 16
 III. Rule 29 Motion: Sufficiency of the Evidence to Sustain the Verdict
 
 A. Governing Standard
 
 17
 A Rule 29 motion must be denied if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979), reh'g denied, 444 U.S. 890 (1979). See also Sharif, 817 F.2d at 1375; U.S. v. Clevenger, 733 F.2d 1356 (9th Cir.1984) (applying the language in Jackson v. Virginia ). The district court granted defendant's motion, stating that "[t]he reasonable inference which can be ddrawn from the circumstantial evidence leave too much room for reasonable doubt" and "[a] reasonable fact-finder would have had to make an unsupported inferential leap in order to return a verdict of guilty." Whether the district court articulated the standard correctly is immaterial since this Court's review is de novo.
 
 B. Elements of the Offense
 
 18
 The elements of the crime of possessing a machine gun under Secs. 922(o) and 924(a)(2) are: (1) that the defendant possessed the firearm; (2) that the firearm was a machine gun; and (3) that defendant had knowledge that the firearm was a machine gun. In the present case, the first two elements are not disputed; the sole issue is whether, viewing the evidence in the light most favorable to the government, a rational jury could have found beyond a reasonable doubt that defendant knew the firearm was a machine gun.
 
 
 19
 1. The Requirement of Knowledge Under Sec. 924(a)
 
 
 20
 This Court discussed the knowledge requirement under Sec. 924(a) in U.S. v. Sherbondy, 865 F.2d 996, 1001-02 (9th Cir.1988) (explaining the awkward inclusion of the mens rea requirement in Sec. 924(a), the penalty provision for Sec. 922 offenses, as "simply to avoid having to add 'willful' or 'knowing' into every subsection of section 922"). In Sherbondy, we held that the knowledge requirement meant that the defendant need only have knowledge of the "commission of those acts or omissions" which actually violate the law and not knowledge of the law itself. Id. at 1002-03.
 
 
 21
 [T]he legislative history of section 924(a) makes it clear that knowledge of the law was not what Congress intended by the "knowingly" requirement. Indeed, in drafting section 924(a), Congress chose the word "knowingly" precisely because it did not want knowledge of the law to be an element of the offenses.
 
 
 22
 Id. at 1002. In the present case, therefore, the government must prove that the defendant had knowledge that he possessed a machine gun, not that he knew the law prohibited such possession.
 
 
 23
 2. Sec. 5861(d) and Staples v. U.S.
 
 
 24
 In reviewing the evidence before the jury under Sec. 922(o), we recognize the relevance of its precursor statute, 26 U.S.C. Sec. 5861(d), which prohibited the possession of unregistered machine guns. See U.S. v. Kurt, 988 F.2d 73, 75 (1993) (noting that Sec. 922(o) rendered Sec. 5861(d) inapplicable to machine guns after 1986). In Staples v. U.S., 114 S.Ct. 1793, 128 L.Ed. 608 (1994), the Supreme court held that a defendant under Sec. 5861(d) must have had knowledge that his firearm was a machine gun, and that mere ownership or possession of a firearm was insufficient to establish a defendant's knowledge of a gun's illegal characteristics. 114 S.Ct. at 1799, 128 L.Ed.2d at 619. "There is a long tradition of widespread lawful gun ownership by private individuals in this country," and "we have taken" "particular care ... to avoid construing a statute to dispense with mens rea where doing so would 'criminalize a broad range of apparently innocent conduct.' " Id. "Despite their potential for harm, guns generally can be owned in perfect innocence." 114 S.Ct. at 1800, 128 L.Ed.2d at 620. This reasoning applies a fortiori to the present case, in which the requirement of knowledge is statutorily imposed.
 
 
 25
 The Staples Court declined, however, to address what evidence would be sufficient to find that a defendant has knowledge: "We, of course, express no view concerning the inferences a jury may have drawn regarding petitioner's knowledge from the evidence in this case." Staples, 114 S.Ct. at 1802, 128 L.Ed.2d at 622, n. 10. It is to the issue of the sufficiency of evidence that we now turn.
 
 C. Analysis of the Evidence
 
 26
 We must examine all of the evidence to determine whether it could permit a rational jury to conclude that the government's burden of proving knowledge beyond a reasonable doubt has been met. In the absence of a confession or direct testimony that defendant fired the gun in fully automatic mode, or otherwise learned of its illegal nature, the evidence as to knowledge is necessarily circumstantial. "Circumstantial evidence and reasonable inferences are sufficient to sustain a conviction." U.S. v. Baker, 10 F.3d 1374, 1418 (9th Cir.1993) (citation omitted).
 
 
 27
 While we recognize that the district court's conclusion that "reasonable doubt remains" as to the defendant's knowledge is one possible rational understanding of the evidence, it is not the only rational understanding. A rational jury could have found beyond a reasonable doubt that based on all of the evidence, the defendant had knowledge of the fully automatic status of his firearm. A rational jury could have inferred knowledge from the fact that defendant had chambered one round of ammunition, fired a warning shot, and then chambered another round of ammunition in preparation for firing another shot. This method of loading the gun could reasonably suggest that defendant knew that if he loaded the gun with more than one round, it would fire in fully automatic mode.
 
 
 28
 Agent Silva's testimony about the gun supports such a theory. Specifically, Agent Silva explained that if the gun had been loaded with the magazine, "there would be no way you could fire it semiautomatic." He continued, "If, however, you left one round of ammunition in the magazine and then loaded it into the weapon and removed the magazine, you would only get one shot because there are no other rounds there to be picked up." While he stated that some gun owners removed magazines to make their guns "more maneuverable", a rational jury could have found, in light of all of the evidence--including the suggestion of defendant's military experience with assault weapons, the wear on the gun from extensive use of the lightning link, the significant amount of ammunition he had brought with him, and the fact that he had fired one round already before he was detained--that defendant's method of loading the gun one round at a time indicated a knowing attempt to avoid firing it fully automatically. Thus, this jury was not irrational in finding that defendant knew his firearm was a machine gun.
 
 
 29
 In considering a Rule 29 motion under Jackson and Sharif, a Court must view the evidence in the light most favorable to the government in deciding whether any rational trier of fact could have found guilt beyond a reasonable doubt. We find that a rational jury could have found beyond a reasonable doubt that defendant had knowledge that his gun was a machine gun. Accordingly, we reverse the district court's grant of defendant's Rule 29 motion and remand for sentencing.
 
 
 
 *
 The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Agent Silva indicated that in examining the photograph, it was difficult to determine whether the gun was an M-16 military rifle or an AR-15, its civilian counterpart. As the Supreme Court in Staples v. U.S. explained:
 The AR-15 is the civilian version of the military's M-16 rifle, and is, unless modified, a semiautomatic weapon. The M-16, in contrast, is a selective fire rifle that allows the operator, by rotating a selector switch, to choose semiautomatic or automatic fire. Many M-16 parts are interchangeable with those in the AR-15 and can be used to convert the AR-15 into an automatic weapon. No doubt to inhibit such conversions, the AR-15 is manufactured with a metal stop on its receiver that will prevent an M-16 selector switch, if installed, from rotating to the fully automatic position.
 Staples v. U.S., 114 S.Ct. 1793, 1796, 128 L.Ed.2d 608, 614 (1994).