RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0274P (6th Cir.)
File Name: 03a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*    No. 01-2416

ROBERT BOURNES,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-80469—Gerald E. Rosen, District Judge.

Argued: March 27, 2003

Decided and Filed: July 11, 2003[*]

Before: MARTIN, Chief Circuit Judge; KENNEDY and
DAUGHTREY, Circuit Judges.

---

### COUNSEL

**ARGUED:** Jonathan Epstein, FEDERAL PUBLIC
DEFENDERS OFFICE, Detroit, Michigan, for Appellant.

---

[*] This decision was originally issued as an "unpublished decision" filed on July 11, 2003.

Patricia G. Gaedeke, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Jonathan Epstein, FEDERAL PUBLIC DEFENDERS OFFICE, Detroit, Michigan, for Appellant. Patricia G. Gaedeke, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

### OPINION

---

 MARTHA CRAIG DAUGHTREY, Circuit Judge. The defendant, Robert Bournes, pleaded guilty to possession of unregistered firearms in violation of 26 U.S.C. § 5861(d), reserving the right to appeal the district court's denial of his motion to dismiss the indictment based on his contention that the statute violates his right to bear arms under the Second Amendment and that the conviction violated his right to due process because he could not comply with its terms. We find no valid grounds for reversal and specifically reject the so-called "doctrine of impossibility" on which the defendant relies.

### *FACTUAL AND PROCEDURAL BACKGROUND*

 Defendant Bournes first came to the attention of law enforcement because of his involvement with certain militant groups in Michigan. At some time after 1986 but prior to 1998, Bournes purchased the parts for and built a Sten-type 9mm machine gun and a .30 caliber belt-fed, bipod-mounted machine gun. In January 1998, a confidential informant brought an undercover agent from the Bureau of Alcohol, Tobacco, and Firearms to Bournes's home in Blissfield, Michigan. Bournes showed the ATF agent numerous firearms, including the two machine guns, and several thousand rounds of ammunition. During a subsequent visit, Bournes demonstrated the machine guns and then allowed the ATF agent to fire the weapons, which, the agent determined,

were fully automatic. ATF agents executed a federal search warrant of Bournes's home in March 1998 and recovered the machine guns and other firearms. According to Bournes, he then tried to register the weapons in May 1998, by going through what he described as a "Class Two manufacturer," but he was unable to register the machine guns because he himself did not have a Class Two license.

In May 1999, Bournes was indicted by a federal grand jury for possession of unregistered firearms in violation of 26 U.S.C. § 5861(d). After the indictment was returned, Bournes again attempted without success to register the machine guns. Bournes then moved to dismiss the indictment, on the grounds: (1) that there was no basis for federal jurisdiction because his possession of the machine guns was not related to interstate commerce; (2) that, as a member of the Michigan Militia Corps Wolverines, he had a Second Amendment right to possess the machineguns; (3) that the federal government prevented him from registering the machine guns and, therefore, could not prosecute him for failing to register the weapons; and (4) that 26 U.S.C. § 5861(d) and 18 U.S.C. § 922(o), which prohibit the transfer or possession of machine guns, violate the Second Amendment by banning all machine guns. The district court held a hearing and denied Bournes's motion to dismiss the indictment. *See United States v. Bournes*, 105 F. Supp. 2d 736 (E.D. Mich. 2000).

On the day his trial was scheduled to begin, Bournes entered into a conditional plea agreement, by which he reserved his right to appeal the district court's denial of his motion to dismiss the indictment.

## *DISCUSSION*

### 1. Second Amendment Claim

Bournes first argues that § 5861(d) is "an unconstitutional infringement on [his] Second Amendment right to keep and bear arms." In reviewing such a claim, we have held,

however, that "the Second Amendment guarantees a collective rather than an individual right." *United States v. Warin*, 530 F.2d 103, 106 (6th Cir. 1976). Accordingly, "there can be no serious claim to any express constitutional right of an individual to possess a firearm." *Stevens v. United States*, 440 F.2d 144, 149 (6th Cir. 1971).

Recognizing this authority and our well-entrenched rule that a panel of this court cannot overrule the published opinion of another panel unless an intervening Supreme Court decision mandates modification of the prior opinion, *see United States v. Ables*, 167 F.3d 1021, 1027 (6th Cir. 1999), Bournes urges us to reconsider our holding in *Warin* in light of *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990). But whatever the value of dicta in that opinion referring to the Court's understanding of the Second Amendment's "textual exegesis," *id.* at 265, we have reaffirmed *Warin* on at least two occasions in the interim. *See United States v. Baker*, 197 F.3d 211, 216 (1999); *United States v. Napier*, 233 F.3d 394, 402 (6th Cir. 2000). Without a subsequent *en banc* ruling to the contrary, we are therefore bound to apply *Warin* in this case.

### 2. Due Process Claim

The National Firearms Act prohibits a private citizen from receiving or possessing an unregistered firearm, *see* 26 U.S.C. § 5861(d), and provides that all applications to register a firearm will be denied if possession of the firearm is itself unlawful. *See* 26 U.S.C. §§ 5812(a), 5822. The Firearm Owners' Protection Act, which amended the Gun Control Act of 1968, makes it illegal for any person to possess a machine gun that was not lawfully possessed before May 19, 1986. *See* 18 U.S.C. § 922(o). Together the two acts make it statutorily impossible for an individual to register a machine gun built or transferred after the effective date of the Firearm Owners' Protection Act.

Bournes nevertheless contends that his conviction under § 5861(d) is a violation of due process guaranteed by the Fifth Amendment because, restricted by the terms of these two legislative acts, he cannot register his machine guns. In support of his argument, Bournes points to *United States v. Dalton*, 960 F.2d 121 (10th Cir. 1992), and urges us to adopt the "impossibility defense" enunciated in that opinion. Dalton was an attorney who accepted a machine gun as payment from a client and was convicted of possessing and transferring an unregistered firearm in violation of §§ 5861(d) and (e). *See id.* at 122. The Tenth Circuit determined that Dalton's failure to register the machine gun was a "fundamental ingredient" of his offenses and held that the conviction was fundamentally unfair because it was legally impossible for Dalton to register the machine gun and thereby comply with § 5861(d). *See id.* at 124, 126.

In response, the government directs our attention to the Fourth Circuit's decision in *United States v. Jones*, 976 F.2d 176, 182-83 (4th Cir. 1992), *cert. denied*, 508 U.S. 914 (1993). The defendant in *Jones* had converted two shotguns into machine guns and then transported the firearms across state lines and sold them to an undercover agent. *See id.* at 178-79. A jury convicted Jones of violating three provisions of the National Firearms Act: § 5861(c) for possessing firearms made without the requisite permission; § 5861(e) for transferring firearms without the requisite approval; and §5861(j) for transporting unregistered firearms. *Id.* at 179. The defendant, relying on *Dalton*, argued that his conviction was fundamentally unfair because the Firearm Owners' Protection Act made it impossible for him to receive the authorization necessary to comply with the National Firearms Act. The Fourth Circuit disagreed, reasoning:

[T]he two statutes are not irreconcilable because, despite Jones'[s] assertions to the contrary, Jones *can* comply with both acts. While he may not be able to register newly-made machine guns in which he deals, neither act requires him to deal in such guns. Simply put, Jones can

comply with both acts by refusing to deal in newly-made machine guns. . . . What Jones is really complaining about is that the amendment to the Gun Control Act effectively rendered possession of certain guns automatic violations of both the Gun Control Act and the National Firearms Act. Yet there is nothing either inconsistent or unconstitutionally unfair about Congress'[s] decision to do so. And, faced with two equally applicable penal statutes, there is nothing wrong with the government's decision to prosecute under one and not the other. . . .

*Id.* at 183.

Every other circuit that has considered this issue has rejected *Dalton* and, instead, adopted the reasoning of *Jones*. *See United States v. Elliot*, 128 F.3d 671, 672 (8th Cir. 1998) (*per curiam*) (upholding § 5861(d) conviction because § 922(o) and § 5861(d) are reconcilable); *Hunter v. United States*, 73 F.3d 260, 262 (9th Cir. 1996) (*per curiam*) (same); *United States v. Ardoin*, 19 F.3d 177, 180 (5th Cir. 1994) (same), *cert. denied*, 513 U.S. 933 (1994); *United States v. Ross*, 9 F.3d 1182, 1194 (7th Cir. 1993) (same), vacated on other grounds, 511 U.S. 1124 (1994); *see also United States v. Rivera*, 58 F.3d 600, 601-02 (11th Cir. 1995) (applying *Jones*-type reasoning and rejecting *Dalton* in case of convicted felon who could not, by statute, register firearm).

Although we have previously been asked to adopt *Dalton*, we have declined to do so, finding that the facts of the cases under review could be distinguished from those in the Tenth Circuit case. *See United States v. Mise*, 240 F.3d 527, 530 (6th Cir. 2001) (distinguishing *Dalton* because registration of pipe bomb was not clearly a legal impossibility); *id.* at 533 (Clay, J., concurring and calling for Sixth Circuit to reject *Dalton* and adopt *Jones*); *see also United States v. M/G Transport Services, Inc.*, 173 F.3d 584, 587 (6th Cir. 1999) (distinguishing *Dalton* given legal possibility of obtaining permit necessary to comply with Clean Water Act). We take this occasion, involving a case with facts squarely on point

with those in *Dalton*, to reject the reasoning of that opinion and, instead, follow our sister circuits in adopting the more compelling reasoning of *Jones*. We hold that compliance with the relevant provisions of both the National Firearms Act and the Firearms Owners' Protection Act is easily achieved: Bournes could have complied simply by electing not to possess the machine guns at issue in this case. Furthermore, "the Constitution does not forbid making the same conduct illegal under two statutes, and the government is permitted to prosecute under either one." *Hunter*, 73 F.3d at 262; *see also Jones*, 976 F.2d at 183, citing *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979), and *Ball v. United States,* 470 U.S. 856, 859 (1985). It follows that the defendant's conviction was not fundamentally unfair or otherwise a violation of due process.

### *CONCLUSION*

For the reasons set out above, we sustain the district court's denial of the defendant's motion to dismiss the indictment and AFFIRM the judgment of conviction and sentence in all respects.